[Cite as *State v. Rhines*, 2011-Ohio-3615.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                    :
                                 :    Appellate Case No. 24203
        Plaintiff-Appellee       :
                                 :    Trial Court Case No. 2009-CR-2966
v.                               :
                                 :    (Criminal Appeal from
ANTONIO RHINES                   :     Common Pleas Court)
                                 :
        Defendant-Appellant      :
                                 :
                          . . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of July, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery
County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O.
Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MICHAEL C. THOMPSON, Atty. Reg. #0041420, 5 North Williams Street, Wright-Dunbar
Business Village, Dayton, Ohio 45402-2843
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

RICE, J., sitting by assignment.

{¶ 1}   Appellant, Antonio Rhines, appeals the judgment of the Montgomery County
Court of Common Pleas, denying his motion to suppress evidence.  For the reasons that
follow, we affirm.

**{¶ 2}** On October 9, 2009, the grand jury returned a two-count indictment against appellant, charging him with aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1), with a firearm specification, in violation of R.C. 2929.14 and R.C. 2941.145, and having weapons under disability with a prior offense of violence, a felony of the third degree, in violation of R.C. 2923.13(A)(2).

**{¶ 3}** Appellant pled not guilty and filed a motion to suppress challenging all identification evidence, including a show-up at the crime scene. The court held a suppression hearing on October 28, 2009.

**{¶ 4}** Officer Bruce Jones of the Dayton Police Department testified that on September 9, 2009, at about 1:20 a.m., he was dispatched to Blind Bob's bar on a robbery call. On arrival, Officer Jones met with the victim, Justin Roseberry, in front of the bar. Mr. Roseberry reported that when he left Blind Bob's, he was approached by two black males in the parking lot on the side of the bar. One of the males appeared to be acting as a lookout, while the other male, later identified as appellant, robbed Mr. Roseberry with a silver semiautomatic handgun.

**{¶ 5}** Mr. Roseberry described the robber as a stocky black male wearing a black t-shirt with white squiggly writing. Mr. Roseberry said the robber did not have anything covering his face. The robber was wearing a black baseball cap and dark-colored pants. Officer Jones said the lighting where Mr. Roseberry was robbed was good, as there are streetlights in the parking lot. After making his report and providing his contact information, Mr. Roseberry left the scene.

**{¶ 6}** Officer Jones testified that he immediately broadcasted the report, including the

robber's description, over the police radio. In less than 30 minutes, two other officers radioed that they had located an individual matching the suspect's description hiding under a porch one-half block away from the scene of the robbery.

{¶ 7} Those officers pulled appellant out from under the porch. Although he was not wearing the clothes Mr. Roseberry had described (he was wearing a white tank top), the officers found a black t-shirt with white squiggly writing as described by Mr. Roseberry under the porch where appellant had been hiding. Wrapped inside that shirt was a black baseball cap as described by Mr. Roseberry. The officers also found under the porch Mr. Roseberry's college identification card. In addition, the officers found a silver handgun as described by the victim under a bush a few feet from where they found appellant. The officers detained appellant and walked him over to Officer Jones' cruiser.

{¶ 8} Officer Jones then called Mr. Roseberry on his cell phone, told him officers had found some items, and asked him to come to the porch where the items were found to see if he could identify them. After Mr. Roseberry arrived, Officer Jones showed him the gun, and Mr. Roseberry said that was the gun the robber had used to rob him. Mr. Roseberry also identified his college identification card, and said it had been taken from him in the robbery.

{¶ 9} At that time, other officers were standing with appellant near Officer Jones' cruiser a short distance away. Officer Jones asked Mr. Roseberry to return to his car and drive by his cruiser to see if he could recognize an individual standing at the cruiser with the officers. Officer Jones did not tell him they had someone in custody and appellant was not handcuffed at the time.

{¶ 10} While talking to Mr. Roseberry on his cell phone, Officer Jones told him to

honk his horn as he drove by the male if he recognized him. The officer said that as Mr. Roseberry drove past the suspect, who was about 15 feet away from the victim in a well-lit area, Mr. Roseberry said, "That's him" without any hesitation and honked his horn. Officer Jones said he did not influence Mr. Roseberry's identification of appellant in any way. Appellant was then arrested and booked at the station at about 2:00 a.m.

{¶ 11} On January 5, 2010, the trial court denied appellant's motion to suppress, and found that Mr. Roseberry's identification was reliable based on the following findings: (1) Mr. Roseberry had an opportunity to see appellant during the robbery; (2) the victim gave a description of appellant's physical appearance, clothing, and weapon; (3) although the black t-shirt and gun were not on appellant when he was found, they were close to him with Mr. Roseberry's property; and (4) Mr. Roseberry identified appellant within about 45 minutes of the robbery. The court also found that appellant failed to prove the show-up was unnecessarily suggestive or conducive to an irreparably mistaken identification.

{¶ 12} Appellant subsequently discharged his attorney and retained new counsel, who moved for a re-hearing on appellant's motion to suppress, arguing that because Mr. Roseberry did not testify at the original hearing, his identification was received through the hearsay testimony of Officer Jones. The state opposed the motion, and the court, by its judgment, dated March 2, 2010, denied the motion, finding: (1) that appellant had not presented any evidence to suggest the identification procedure used was impermissibly suggestive; (2) that hearsay is admissible at a hearing on a motion to suppress; and (3) that appellant's original counsel had extensively cross-examined Officer Jones and had represented appellant appropriately.

{¶ **13**} Thereafter, on August 5, 2010, appellant pled no contest to the indictment and was found guilty. On August 10, 2010, he was sentenced to three years in prison on both counts, each to be served concurrently to the other, and three years on the firearm specification, to be served consecutively to the other terms, for a total of six years in prison.

{¶ **14**} Appellant appeals the trial court's denial of his motion to suppress, asserting three assignments of error. For his first assigned error, he alleges:

{¶ **15**} "The trial court erred by overruling the appellant's motion to suppress because Officer Jones testified to statements made by the victim in violation of the appellant's Sixth Amendment right to confront adverse witnesses."

{¶ **16**} " '[The] [a]ppellate standard of review for a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the legal standard.' " *State v. Brock*, Montgomery App. No. 23665, 2010-Ohio-5885, at ¶12, quoting *State v. Burnside*, 100 Ohio St.3d 152, 154-55, 2003-Ohio-5372. Thus, "[i]n reviewing the trial court's ruling on a motion to suppress evidence, this court is governed by the de novo standard of review and must accept the findings of fact made by the trial court if they are supported by competent, credible evidence." *State v. Johnson*, Montgomery App. No. 23693, 2010-Ohio-6224, at ¶10, citing *State v. Keller* (Jan. 14, 2000), Montgomery App. No. 17896.

{¶ 17} Appellant argues the trial court erred in denying his motion to suppress because the admission of Officer Jones' testimony regarding various out-of-court statements of Mr. Roseberry, especially his identification of appellant, violated his right to confront adverse witnesses pursuant to the Sixth Amendment to the United States Constitution. The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

{¶ 18} As a preliminary matter, we note that appellant failed to object to the testimony of Officer Jones regarding Mr. Roseberry's out-of-court statements. "The general rule is that 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' * * * Likewise, '[c]onstitutional rights may be lost as finally as any others by a failure to assert them at the proper time.' * * *" (Internal citations omitted.) *State v. Awan* (1986), 22 Ohio St.3d 120, 122. (Citations omitted.) "Defense counsel's failure to object waives all but plain error. *State v. Ballew*, 76 Ohio St.3d 244, 251, 1996-Ohio-81, 667 N.E.2d 369. Counsel's failure to object ' "constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." ' " *State v. Boykin*, Montgomery App. No. 19896, 2004-Ohio-1701, at ¶18. The Supreme Court of Ohio defined plain error in *State v. Barnes*, 94 Ohio St.3d 21, 2002-Ohio-68, as follows:

{¶ 19} "Under Crim.R. 52(B), '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' 'By its very terms, the rule places three limitations on a reviewing court's decision to correct an error

despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. * * *

{¶ 20} "Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court 'may' notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing [appellate] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' * * *." *Barnes*, supra, at 27. (Internal citations omitted.)

{¶ 21} Further, this court in *State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, held: " 'The burden of demonstrating plain error is on the party asserting it. See, e.g., *State v. Jester* (1987), 32 Ohio St.3d 147, 150. A reversal is warranted if the party can prove that the outcome "would have been different absent the error." *State v. Hill* (2001), 92 Ohio St.3d 191, 203, 2001-Ohio-141, 749 N.E.2d 274.' " *Porter*, 2008-Ohio at ¶ 40.

{¶ 22} Since appellant waived any challenge under the Confrontation Clause by failing to object to Officer Jones' testimony at the suppression hearing, we review the record for plain error. In support of his argument that the trial court erred in admitting Officer Jones' testimony, appellant cites *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. However, *Crawford* is distinguishable because it involved the admission of a

tape recording of a witness' statement *at trial*, which incriminated the defendant, rather than at a suppression hearing. In *United States v. Raddatz* (1980), 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424, the United States Supreme Court discussed the use of hearsay testimony at suppression hearings, as follows:

{¶ 23} "This Court * * * has noted that the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself. At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial. *United States v. Matlock*, 415 U.S. 164, 172-174, 94 S.Ct. 988, 993-994, 39 L.Ed.2d 242 (1974); *Brinegar v. United States*, 338 U.S. 160, 172-174, 69 S.Ct. 1302, 1309-1310, 93 L.Ed. 1879 (1949); Fed. Rules Evid. 104 (a), 1101 (d)(1). * * * We conclude that the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself." *Raddatz*, supra, at 679. (Citation omitted.)

{¶ 24} This court followed the holding in *Raddatz* in *State v. Tucker*, Montgomery App. No. 20956, 2005-Ohio-5227, as follows:

{¶ 25} " 'The rules of evidence normally applicable in criminal trials do not operate with full force and effect in hearings before the judge to determine the admissibility of evidence.' *U.S. v. Matlock* (1974), 415 U.S. 164, 172-73, 94 S.Ct. 988, 39 L.Ed.2d 242. A Crim. R. 12(C)(3) motion to suppress evidence challenges its admissibility. Therefore, in ruling on the motion, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial. *U.S. v. Raddatz*, (1980), 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424. Evid.R. 101(C)(1) creates an exception to the Rules of Evidence with

respect to '[d]eterminations prerequisite to the admissibility of evidence when the issue is to be determined by the court under Evid.R. 104.' That rule provides that questions concerning admissibility shall be determined by the court. *Such determinations implicate the right of confrontation in only a limited way, if at all.*" *Tucker*, supra, at ¶8. (Emphasis added.)

{¶ 26} Since Officer Jones' testimony concerning the statements of Mr. Roseberry was presented at a suppression hearing, rather than at trial, the trial court did not err in admitting this testimony. Without error, there can be no plain error. *Barnes*, supra. Further, appellant failed to demonstrate prejudice, another prerequisite of plain error. Id. In order to demonstrate prejudice in the context of a no contest plea, the defendant must show there is a reasonable probability that, but for counsel's errors, he would not have pled no contest and instead would have insisted on going to trial. *State v. Kinsinger*, Montgomery App. No. 23966, 2011-Ohio-2826, at ¶13, citing *State v. Xie* (1992), 62 Ohio St.3d 521, 524; *Hill v. Lockhart* (1985), 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203. Appellant made no such showing. Moreover, we do not perceive such exceptional circumstances here that would warrant our exercise of discretion to take notice of plain error in order to prevent a manifest miscarriage of justice. Id. We therefore hold the admission of Officer Jones' testimony at the suppression hearing did not constitute plain error.

{¶ 27} Appellant's first assignment of error is overruled.

{¶ 28} For his second assigned error, appellant contends:

{¶ 29} "Appellant was denied effective assistance of trial counsel and this error rose to the level of plain error."

{¶ 30} Appellant argues that "the Confrontation Clause error" in the instant case rose

to the level of plain error, and that counsel's failure to object to Mr. Roseberry's out-of-court statements offered by Officer Jones amounted to ineffective assistance of counsel. As discussed under our analysis of appellant's first assignment of error, the admission of Officer Jones' testimony during appellant's suppression hearing was not error and therefore did not constitute plain error. Id. As a result, this aspect of appellant's second assignment of error lacks merit. We now turn to a consideration of whether defense counsel's failure to object to Officer Jones' testimony at the suppression hearing amounted to ineffective assistance of counsel.

{¶ 31} To establish ineffective assistance of counsel, appellant must satisfy a two-prong test. First, he must show that counsel's actions fell below an objective standard of reasonableness. *Strickland v. Washington* (1984), 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674. To demonstrate an error in counsel's actions, appellant must overcome the presumption that licensed attorneys are competent. Id. at 688. To rebut this presumption, the defendant must show that the challenged action did not fall within a range of reasonable assistance. Id. at 689. Second, appellant must demonstrate that, due to his attorney's deficient performance, he was prejudiced. Id. at 694. To satisfy this prong in the context of a no contest plea, the defendant must show that there is a reasonable probability that, but for his attorney's errors, he would not have pled no contest. *Kinsinger*, supra, 2011-Ohio-2826, at ¶ 13, citing *Xie*, supra, citing *Strickland*, supra.

{¶ 32} Appellant argues the trial court's denial of his motion to suppress must be reversed because he was prejudiced when his counsel failed to object to Officer Jones' testimony regarding Mr. Roseberry's statements. Appellant's reliance on *State v. Gray*, 12th

Dist. No. CA2008-12-294, 2009-Ohio-4821, is misplaced because in that case the police officer testified *at trial* regarding out-of-court statements made by the victim, including the victim's identification of the defendant. Because the testimony at issue here was offered during a suppression hearing, rather than at trial, and, as discussed above, the admission of hearsay at a suppression hearing is not error, appellant's counsel was not deficient in not objecting to it. "Counsel is not required to raise objection where that objection would be groundless." *State v. Bittner* (Dec. 11, 1985), 9th Dist. No. 3906, 1985, WL 4373, *2. Moreover, appellant failed to demonstrate that, but for his attorney's failure to object to Officer Jones' testimony, he would not have pled no contest.

{¶ 33} We therefore hold that appellant was not deprived of the effective assistance of counsel.

{¶ 34} Appellant's second assignment of error is overruled.

{¶ 35} For his third and final assignment of error, appellant alleges:

{¶ 36} "The trial court erred in admitting evidence of the show-up identification when it was inherently suggestive and unreliable and thereby, a violation of due process."

{¶ 37} Appellant argues that the trial court erred in denying his motion to suppress because the identification procedure used in this case was unreliable and highly suggestive. We do not agree. This court summarized the guidelines for determining the admissibility of identification testimony in *State v. Marshall*, Montgomery App. No. 19920, 2004-Ohio-778, as follows:

{¶ 38} "Due process requires suppression of pre-trial identification of a suspect only if the identification procedure was so impermissibly suggestive as to give rise to a very

substantial likelihood of misidentification. *Neil v. Biggers* (1972), 409 U.S. 188, 196-97, 93 S.Ct. 375, 34 L.Ed.2d 401. To establish a due process violation, a defendant must prove that the out of court confrontation was 'unnecessarily suggestive and conducive to irreparable mistaken identification.' *Stovall v. Denno* (1967), 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199. However, *even where the identification procedure is suggestive, so long as the challenged identification itself is reliable, it is still admissible. State v. Moody* (1978), 55 Ohio St.2d 64, 377 N.E.2d 1008. See *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140, ('reliability is the linchpin in determining the admissibility of identification testimony').

{¶ 39} "In evaluating reliability of the identification, factors to be considered are: 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' *Biggers*, supra at 199; *Moody*, supra at 67, 377 N.E.2d 1008. Initially, it is worth noting that *police use of a show-up, without more, does not violate due process. Biggers*, supra at 198. Indeed, this Court has found that '[p]rompt on the scene show ups tend to insure the accuracy of the identification, involve a minimum intrusion and insure the prompt release of persons not identified.' *State v. Gilreath* (June 19, 1992), Greene App. No. 91-CA-35.

{¶ 40} "Undoubtedly, *the showing of one suspect to witnesses is suggestive. The central question is whether, under the totality of circumstances, the identification was reliable even though the confrontation procedure was suggestive. Neil v. Biggers*, supra." *Marshall*,

supra, 2004-Ohio-778, at ¶11-13. (Emphasis added.)

{¶ 41} More recently, with respect to police use of a show-up, this court in *State v. Hubbard*, Montgomery App. No. 23363, 2010-Ohio-3910, stated:

{¶ 42} " 'Show-ups at or near the scene of a crime, that occur shortly after the crime, are not only permissible, but useful, since they can lead to an identification or non-identification while the characteristics of the perpetrator are still fresh in the witness's memory. *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401. However, the show-up must not be unduly suggestive. Id. The defendant bears the burden to prove that a show-up procedure was so suggestive of guilt that it requires suppression. Id. at 199; [*State v. Murphy*, 91 Ohio St.3d 516, 534, 2001-Ohio-112, 747 N.Ed.2d 765].' " *Hubbard*, supra, at ¶11.

{¶ 43} Applying these principles to the instant case, Officer Jones testified that Mr. Roseberry reported he was approached by two males in the parking lot and was able to describe the male that robbed him. Mr. Roseberry said the robber's face was not covered. Officer Jones testified that at the time of the crime, the parking lot where the robbery occurred was well-lit with streetlights. As a result, there was evidence that Mr. Roseberry had an opportunity to view appellant at the time of the robbery.

{¶ 44} Further, Mr. Roseberry described the robber as a stocky black male, wearing a black t-shirt with white squiggly writing and a black baseball cap and holding a silver semiautomatic handgun. Moreover, when police pulled appellant out from under the porch, which was only one-half block away from the scene of the robbery, although appellant was wearing a white tank top at the time, police additionally found the black t-shirt with squiggly

white writing and the black baseball cap that Mr. Roseberry had described. Also, police found under the porch with appellant Mr. Roseberry's college identification, which Roseberry later identified as property that had been stolen from him. Further, a few feet away, the officers found a silver handgun, which Mr. Roseberry had also described and identified. Consequently, the trial court heard evidence that Mr. Roseberry had accurately described appellant.

{¶ 45} Moreover, when Mr. Roseberry drove past appellant, who was standing at the police cruiser in a well-lit area about 15 feet away, Mr. Roseberry immediately identified appellant, without hesitation, saying, "That's him." Rosenberry thus demonstrated a high level of certainty at the confrontation.

{¶ 46} Finally, the time between the robbery and the show-up was relatively brief, about 40 minutes.

{¶ 47} Contrary to appellant's argument, Officer Jones testified he did not tell Mr. Roseberry that he had someone in custody. Rather, Officer Jones simply asked him to look at the male standing near his cruiser and to honk his horn if he was able to recognize him. Further, contrary to appellant's argument, the fact that Officer Jones showed Mr. Roseberry his college identification and a handgun did not imply that police had apprehended a suspect. These items could just as easily have been found without a suspect. Moreover, contrary to appellant's argument, Mr. Roseberry never asked Officer Jones if he had identified the right person. To the contrary, Officer Jones testified that after Mr. Roseberry honked his horn, he asked the officer, "How was that?"; and, as the trial court found, Officer Jones said, "That was fine," indicating that he had heard Roseberry honk his horn. Finally, while appellant was near

the cruiser with other officers at the time Mr. Roseberry made his identification, such circumstances do not per se lead to the conclusion that the show-up used here was unnecessarily suggestive. See *Marshall*, supra. We note that appellant was not handcuffed, nor were there any other indicia that he had been arrested or detained.

{¶ 48} We therefore hold that, under the totality of the circumstances, the trial court's finding that Mr. Roseberry's identification of appellant was reliable was supported by competent, credible evidence, and we cannot say the court erred in denying appellant's motion to suppress.

{¶ 49} Appellant's third assignment of error is overruled.

{¶ 50} For the reasons stated in this opinion, the assignments of error are without merit. It is the judgment and order of this court that the judgment of the Montgomery County Court of Common Pleas is affirmed.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

(Hon. Cynthia Westcott Rice, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Mathias H. Heck
R. Lynn Nothstine
Michael C. Thompson
Hon. Barbara P. Gorman