[Cite as *State v. Ginn*, 2013-Ohio-1692.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                          :

      Plaintiff-Appellee                   :               C.A. CASE NO.    25325

v.                                                              :               T.C. NO.    11CR2917

BRUCE K. GINN                                       :               (Criminal appeal from
                                                                            Common Pleas Court)

      Defendant-Appellant                 :

                                                                  :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____26th_____ day of _____April_____, 2013.

. . . . . . . . . .

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

GARY C. SCHAENGOLD, Atty. Reg. No. 0007144, 4 E. Schantz Avenue, Suite 1, Dayton, Ohio 45409
      Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**   Defendant-appellant Bruce K. Ginn appeals from his conviction and

sentence for one count of operating a vehicle while under the influence (prior felony breath result over .17), in violation of R.C. 4511.19(1)(h) and 4511.19(G)(1)(e), a felony of the third degree. Ginn filed a timely notice of appeal with this Court on August 16, 2012.

{¶ 2} The incident which forms the basis for the instant appeal occurred in the early morning hours of August 19, 2011, when Miami Township Police Officer Patrick McCoy was patrolling near the Dayton Mall. At approximately 2:41 a.m., Officer McCoy observed a lone Cadillac straddling the center lane markings while traveling around a curve. Officer McCoy continued to follow the vehicle after the driver turned onto State Route 725. Officer McCoy observed the vehicle cross over the center lane markings three more times before he activated his overhead lights in order to signal the driver to pull over. Noting that the vehicle was "slow to respond," Officer McCoy testified that it eventually came to a stop in a lighted area along Southwind Road near the border with Washington Township.

{¶ 3} Officer McCoy parked his cruiser approximately thirty-five feet behind the vehicle and reported the stop to dispatch. Upon approaching the vehicle on the driver's side, Officer McCoy observed Ginn who was alone in the vehicle with the window down. Officer McCoy immediately noticed the odor of alcohol emanating from the inside of the vehicle. Officer McCoy testified that Ginn's eyes appeared bloodshot and glassy, his face was flushed, and his speech was "slurred and a little confused." Officer McCoy further testified that after asking for a driver's license, Ginn fumbled around for between five and ten seconds before removing a State of Ohio identification card from his wallet. Officer McCoy testified that Ginn did not possess a valid Ohio driver's license. Moreover, although the Cadillac had South Carolina license plates, Ginn informed Officer McCoy that he did not have a driver's license

issued in South Carolina.

{¶ 4} Officer McCoy returned to his cruiser to check Ginn's information. At that point, Officer Jones arrived at the scene in order to assist with the stop. Both officers approached the vehicle, and Officer McCoy ordered Ginn to turn off and then exit the vehicle. Officer McCoy testified that Ginn "fumbled" with the headlights and radio before stepping out of the vehicle. Officer McCoy administered the horizontal gaze nystagmus test, which Ginn subsequently failed. Officer McCoy testified that he decided not to administer any further tests because Ginn was "swaying a lot" and could not perform the remaining tests safely.

{¶ 5} Officer McCoy handcuffed Ginn, searched him, and placed him in the back of the cruiser. Officer McCoy then transported Ginn to Miami Township police headquarters. At police headquarters, Officer McCoy advised Ginn of the policy regarding breath tests. Ginn verbally consented to a breath test. Officer McCoy, a certified senior operator of the Intoxilyzer 5000, administered the breath test to Ginn. The results of Ginn's breath test registered .215. Officer McCoy testified that he performed all the necessary procedures before and after Ginn had been administered the breath test, and the machine appeared to be operating properly. Ginn stated that he did not know how his results could be that high because he only consumed a few drinks. Officer McCoy remarked to Ginn that "they must have been rather large drinks." Ginn stated that the owner of the one of the bars that he visited gave him five shots of vodka. Officer McCoy then transported Ginn to the Montgomery County Jail.

{¶ 6} On November 14, 2011, Ginn was indicted for one count of operating a vehicle while under the influence (prior felony breath result over .17), in violation of R.C. 4511.19(1)(h) and 4511.19(G)(1)(e), a felony of the third degree. At his arraignment on November 29, 2011,

Ginn stood mute, and the trial court entered a plea of not guilty on his behalf.

{¶ 7} Ginn filed a motion to suppress on December 29, 2011, wherein he sought suppression of all physical and verbal evidence collected at the time of his arrest. After an evidentiary hearing held on March 29, 2012, the trial court issued a decision overruling Ginn's motion to suppress in its entirety in an opinion issued on May 7, 2012. Shortly thereafter on July 20, 2012, Ginn pled no contest to the charged offense. The trial court sentenced Ginn to a twelve month prison term with the initial 120 days being mandatory.

{¶ 8} It is from this judgment that Ginn now appeals.

{¶ 9} Ginn's first assignment of error on appeal is as follows:

{¶ 10} "THE TRIAL COURT COMMITTED ERROR IN ADMITTING INTO EVIDENCE THE INTOXILIZER TEST ADMINISTERED TO DEFENDANT."

{¶ 11} In his first assignment, Ginn contends that the trial court erred when it overruled his motion to suppress. Specifically, Ginn argues that the State failed to establish through the testimony of its witness, Officer McCoy, that the Ohio Department of Health's regulations for the admission of the results of the breath test have been met.

{¶ 12} In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts

as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

{¶ 13} In *State v. Conley*, 2d Dist. Greene No. 2007 CA 52, 2008-Ohio-609, we discussed the requirements for admissibility of a breath test when it is challenged in a motion to suppress as follows:

> "When the admissibility of a breath test is challenged in a motion to suppress, the first issue that must be considered is whether the motion was stated with sufficient particularity to put the prosecutor and the court on notice of the basis of the challenge. See *State v. Shindler* (1994), 70 Ohio St.3d 54, 58 636 N.E.2d 319. * * * In *Schindler*, the Ohio Supreme Court found that a motion to suppress drafted in the same manner and language as a sample motion that appeared in Painter & Looker, Ohio Driving Under the Influence Law (1999) 136-37, Section 11.16, satisfied the requirements of Crim.R. 47. *Id.* at 57. The * * * motion, for example, provided that '[t]he machine or instrument analyzing defendant's alcohol level was not in proper working order and not calibrated in accordance within the time and manner required by O.A.C. 3701-53-04.' *Id.* at 55.
>
> According to the court, this type of motion sufficiently stated the legal and factual bases with the necessary particularity to put the prosecutor and the court on notice of the issues to be decided. *Id.* at 57-58. In line with *Shindler*, this court has held that 'technical challenges to breath tests are sufficient even though no case-specific allegations are made.' *State v. Williams* (Apr. 24, 1998), Montgomery App. No. 16554, 1998 WL 214595, at *2. * * *

Once it is established that the defendant has set forth a sufficient basis for a motion to suppress, the burden shifts to the State to show that it substantially complied with the ODH regulations involved. (Internal citation omitted). The burden to establish substantial compliance, however, only extends to the level with which the defendant takes issue with the legality of the test. (Internal citation omitted). When the defendant's motion to suppress merely raises a generalized claim of inadmissibility and identifies the section(s) of the Administrative Code implicated in that claim, the burden on the State is fairly slight. (Internal citations omitted). To satisfy its burden, we have found that the State 'need only offer prima facie proof that each element of the approved method was performed in a manner sufficient to render the test result evidence reliable.' (Internal citation omitted). Thus, the State must demonstrate compliance only in general terms when the motion to suppress raises issues in general terms. (Internal citation omitted). No specific evidence is required unless the defendant raises a specific issue in his or her motion." *State v. Bissaillon*, Greene App. No. 06-CA-130, 2007-Ohio-2349.

{¶ 14} In *Bissaillon*, we reversed the municipal court's decision sustaining defendant's motion to suppress after defendant argued that the breath machine at issue was not properly calibrated in accordance with the Administrative Code because "the alcohol based solution was not used within three (3) months of its first utilization as required by OAC 3701-53-04[(C)] * * * [and] the solution was not properly refrigerated." Id. We determined that the defendant's motion put the State on notice that the defendant intended to challenge the validity of the instrument

check solution, and that "the burden on the State to show substantial compliance remained general. * * * Thus, when a motion to suppress fails to allege the fact-specific way in which a violation occurred, the State meets its burden by offering basic testimony from an officer responsible for complying with the ODH regulations." *Id*.

{¶ 15} In *Bissaillon*, the State presented the testimony of the officer who arrested the defendant. The officer testified regarding his department's usual practice and procedure to discard the instrument check solutions at three months from the dates they are opened, and he testified that his department's policy is to calibrate the Breathalyzer BAC every six days, as opposed to every seven days under Ohio Adm. Code 3701-53-04(A). Id. The officer stated that a log book is kept with each instrument, and that one can verify the last instrument check by referring to the log books. *Id*.

{¶ 16} In reversing the municipal court's decision, we noted that the officer's testimony "contained no indication of personal observations of compliance with ODH regulations beyond mere knowledge of routine practices. Although the State's burden in this instance is general and slight, a common factor in Ohio cases involving officer testimony has been first-hand knowledge of compliance with ODH regulations at the time of the alcohol and/or drug testing." *Id*.

{¶ 17} In *Bissaillon*, the defendant's motion to suppress raised the specific allegation "that the breath machine was not properly calibrated in accordance with Ohio Administrative Code 3701-53-04" because "the alcohol based solution was not used within three (3) months of it first utilization as required by O.A.C. 3701-53-04(A)(1) *** [and] the solution was not properly refrigerated." *Id*. at ¶ 14. Ginn's motion to suppress, however, does not contain a comparable level of specificity to the motion in *Bissaillon*. In fact, the language utilized in the allegations of

Ginn's motion is much less detailed in regards to the handling of the alcohol based solution, which is at the heart of Ginn's appeal:

b. The breath-testing instrument was not analyzed in accordance with O.A.C. 3701-53-02.

c. The breath-testing instrument was not in proper working order and was not checked in the time and manner required by O.A.C. 3701-53-0.

d. *The solution used to check the breath-testing instrument was invalid and not properly maintained in accordance with O.A.C. 3701-53-04(AS)(1) and (C).*[1]

{¶ 18} Unlike the defendant in *Bissaillon*, Ginn did not argue that the testing solution had expired or had been improperly refrigerated. Rather, Ginn merely alleged the solution was invalid and not properly maintained. Based on the allegations in Ginn's motion to suppress, we agree with the trial court's conclusion that the motion was not sufficiently particularized to put the State on notice that it would be required to demonstrate when the particular batch of simulation testing solution at issue was first used, when it expired, and whether it had been properly refrigerated during its shelf life.

{¶ 19} We also find that even if Ginn's allegations regarding the testing solution did, in fact, put the State on notice that it would have to prove that the solution was unexpired and properly refrigerated, the State met its "general and slight" burden of establishing substantial compliance by offering the testimony of Officer McCoy, who administered the breath test and

---

[1] As noted by the trial court, two of the references cited by Ginn in his motion to suppress, to wit: "O.A.C. 3701-53-0" and "O.A.C. 3701-53-04(AS)(1) and (C)" are invalid because they do not correlate to any actual provision in the O.A.C.

was originally tasked with complying with the O.A.C. regulations. Upon review, the record establishes that Officer McCoy's testimony regarding compliance with O.A.C. regulations was based upon the regularly maintained checklists and printout cards detailing that last calibration check and was sufficient to establish that the instrument checks were performed properly, thereby rendering the test results reliable. See *State v. Mai*, 2d Dist. Greene No. 2005-CA-115, 2006-Ohio-1430, at ¶20-21 (finding the officer's testimony sufficient to demonstrate substantial compliance with Ohio Adm.Code 3701-53-04, where the officer testified that he followed the departmental practice of checking log books for dates of calibration before administering the breath test to defendant); *State v. Lampe*, 2d Dist. Montgomery No. 20499, 2004-Ohio-5832, at ¶13 (finding the officer's testimony of performing an interval test to assure the proper operation of the BAC instrument and checking the log book for the machine's operating status prior to administering defendant's breath test was sufficient evidence of substantial general compliance with testing requirements); *State v. Embry*, 12th Dist. Warren No. CA2003-11-110, 2004-Ohio-6324, at ¶16-17, 32 (finding the defendant's general allegations of noncompliance with ODH testing regulations sufficiently addressed by the officers' testimony providing that they followed the Breathalyzer machine's operational checklist during a calibration check five days prior to testing the defendant, in addition to testimony regarding routine maintenance of log books, records and instrument check solutions); *State v. Johnson*, 137 Ohio App.3d 847, 851, 852, 739 N.E.2d 1249 (12th Dist.2000) (finding testimony that the officer performed calibration tests before and after defendant's breath test, as well as testimony of following the breath-testing device's checklist, demonstrated substantial compliance with ODH regulations).

{¶ 20} In *Bissaillon*, the testifying officer stated that he was not the individual who had

performed the last calibration prior to the defendant's breath test, he did not know who had performed the prior calibration, he was unaware of the date on which the prior calibration had been performed, he did not know the result of the prior calibration, he did not know when the testing solution had first been used, nor did he know when the testing solution expired. "[The officer's] testimony demonstrate[d] little more than awareness of departmental procedures involving breath tests and instrument checks. It does not sufficiently show that those procedures were substantially complied with in this case." *Bissaillon*, 2007-Ohio-2349, at ¶ 47. On that basis, we found that the State had failed to meet its burden to prove that the alcohol based solution was used within three (3) months of its date of first use or that the solution was properly refrigerated.

{¶ 21} In the instant case, however, Officer McCoy relied on records maintained by his department and testified regarding the results of the August 15, 2011, calibration test preceding Ginn's August 19, 2011, breath test. Officer McCoy testified that the first date that the testing solution at issue was used occurred on June 1, 2011. Officer McCoy further testified that the testing solution's discard date was August 30, 2011. Unlike the officer in *Bissaillon*, Officer McCoy did, in fact, display the requisite knowledge in order to establish that he substantially complied with the O.A.C. regulations regarding the proper calibration of the Intoxilyzer 5000 used for Ginn's breath test. Thus, the trial court did not err when it overruled Ginn's motion to suppress the results of his breath test.

{¶ 22} Ginn's first assignment of error is overruled.

{¶ 23} On November 12, 2012, Ginn filed a motion to amend and/or modify his appellate brief. Specifically, Ginn requested permission to file a second supplemental

assignment of error in which he argued that the trial court's decision to admit the results of his intoxilizer test violated his Sixth Amendment right to confront any witnesses against him. We will address his supplemental assignment here.

{¶ 24} In support of his argument, Ginn relies on the U.S. Supreme Court's decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). In that case, the U.S. Supreme Court held that a defendant is entitled to confront the analysts who prepared affidavits pertaining to any substance analyses that were introduced against him at trial. *Id.* at 311. Ginn, however, fails to note that the holding in *Melendez-Diaz* concerned the admissibility of evidence at trial where a defendant's confrontation rights are clearly implicated, rather than a hearing on a motion to suppress.

{¶ 25} "[T]he rules of evidence normally applicable in criminal trials do not operate with full force and effect in hearings before the judge to determine the admissibility of evidence." *U.S. v. Matlock*, 415 U.S. 164, 172-73, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). A Crim.R. 12(C)(3) motion to suppress evidence challenges its admissibility. Therefore, in ruling on the motion, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial. *U.S. v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Evid.R. 101(C)(1) creates an exception to the Rules of Evidence with respect to "[d]eterminations prerequisite to the admissibility of evidence when the issue is to be determined by the court under Evid.R. 104." That rule provides that questions concerning admissibility shall be determined by the court. Such determinations implicate the right of confrontation in only a limited way, if at all. *State v. Tucker*, 2d Dist. Montgomery No. 20956, 2005-Ohio-5227.

{¶ 26} In light of the foregoing, the trial court did not violate Ginn's Sixth Amendment

right ro confrontation when it admitted the results of his breath test into evidence through the use of Officer McCoy's hearsay testimony regarding the calibration testing on the intoxilizer machine.

{¶ 27}   Ginn's second supplemental assignment of error is overruled.

{¶ 28}   Both of Ginn's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

Michele D. Phipps
Gary C. Schaengold
Hon. Mary L. Wiseman